## MUMFORDE v. UNITED STATES.

### No. 7992.

United States Court of Appeals for the District of Columbia.

Argued June 8, 1942.

Decided June 29, 1942.

Writ of Certiorari Denied Oct. 12, 1942.

See —— U.S. ——, 63 S.Ct. 53, 87 L.Ed. ——.

412

Mr. George E. C. Hayes, with whom Mr. Leonard S. Hayes was on the brief, both of Washington, D. C., for appellant.

Messrs. William Hitz and Charles B. Murray, Assistant U. S. Attorneys, with whom Mr. Edward M. Curran, U. S. Attorney, all of Washington, D. C., was on the brief, for appellees. Mr. Dennis B. McCarthy, Assistant U. S. Attorney, of Washington, D. C., also entered an appearance for the appellees.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

GRONER, C. J.

Appellant was convicted of murder on an indictment charging that he had unlawfully and feloniously killed one Fanny Cohen, while attempting to perpetrate robbery. The killing occurred in the District of Columbia, the 15th of February, 1941. Appellant fled to North Carolina, was arrested there, and brought back to the District in the latter part of March following. Two or three days later he made a voluntary confession to the police, in which he stated that on the night in question he had walked into a store on U Street operated by the deceased, with "my hand in my overcoat pocket on the gun", intending "to get some money". "I figured I would * * * hold her up and she would give me the money * * *". As he got inside, Miss Cohen "must have seen the imprint of the gun", as she started toward the door, screaming. "I pulled my gun and fired one shot at her * * *. She fell right down at my feet. I bent down and started to go through her pockets, then I broke and ran out of the door".

At the trial an eye witness testified that as appellant entered the store Miss Cohen walked toward him, and as she approached "he reached and grabbed her and turned his back to the door. She threw up her hands and screamed and the man seemed to turn her around and pulled the gun out and shot her, and then he grabbed the door with his left hand. Just before that he reached over her body and grabbed at something. The man pulled the door open and broke the mirror behind the door and then pulled the door shut and walked up the street to the alley".

At least half a dozen other witnesses, some white, some colored, testified that at various times between the shooting and the trial appellant had stated, either to them or in their presence, that he went into the Cohen store with the intention of committing robbery and that while there shot and killed Miss Cohen. On the trial appellant explained the circumstances of the killing as follows: "Upon entering the place I had the intention of robbing it, but after getting inside the place I abandoned all ideas of robbing it and started to proceed out of the place. A lady made a break at me screaming and since I had started out I wished to continue without having any trouble for anything I had not done; so I yanked the gun with the intention of stopping her screaming so

I could pass out peacefully and as I snatched the gun it went off. I had no intention to shoot her."

He said he had taken the gun from the home of another colored man and had bought the bullets the day of the killing.

■ We have no manner of doubt that the evidence justified the jury's verdict and that any other disposition of the case would have made a mockery of justice. The applicable statute in the District of Columbia[1] defines murder in the first degree as the killing of another while armed with or using a dangerous weapon in the perpetration or attempted perpetration of a robbery. As the statute was a few years ago, it was necessary to show that the killing was done "purposely" to raise the offense to first degree murder. See Jordon v. United States, 66 App.D.C. 309, 87 F.2d 64. In June, 1940, Congress, at the request of the Attorney General, amended the law so that it now provides that the offense is perpetrated even when the killing is "without purpose so to do". Thus, the statute is brought into line with those of many of the States, where a killing committed in an attempted burglary or robbery is declared to be murder in the first degree, and it has been held in those States that the offense is complete even though there was no intent or desire to kill. People v. Smith, Sup., 187 N.Y.S. 836, and State v. McNeal, Mo.Sup., 237 S.W. 738, are typical.

Appellant, as we have seen, testified that he entered the Cohen store with the definite purpose of committing robbery, but that a moment later, as the woman in charge began to scream, he changed his mind and drew the pistol from his pocket, hoping to quiet her and thus to escape detection and arrest, but in the excitement of the moment the pistol was unintentionally discharged and the woman killed. In this account, as wholly different from his confession as it was different from the testimony of the only eye witness, he attempts no explanation of his change of purpose, nor recites a single fact to show an effort to put it into effect. The entry and the killing, as he testified, were simultaneous.

"Whatever may be the other requirements of an effective abandonment of a criminal enterprise, it is certain both as a matter of law and of common sense that there must be some appreciable interval between the alleged abandonment and the act from responsibility for which escape is sought. It must be possible for a jury to say that the accused had wholly and effectively detached himself from the criminal enterprise before the act with which he is charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed. * * * While it may make no difference whether mere fear or actual repentance is the moving cause, one or the other must lead to an actual and effective retirement before the act in question has become so imminent that its avoidance is practically out of the question." People v. Nichols, 230 N.Y. 221, 129 N.E. 883, 885, 886.

Covering this aspect of the case, the court at the request of counsel for appellant gave the following instruction: "The Court instructs the jury that if you find from all of the evidence that the defendant, having entered the store, with the intention of committing a robbery therein, repented and voluntarily abandoned his plan to rob before the fatal shot was fired, then he would no longer be engaged in attempting to perpetrate the robbery, and so he would not be guilty of murder in the first degree under this indictment. However, in order that there be such an abandonment of the attempt to rob, so as to relieve him of further liability with reference to it, there must be some circumstance indicating such abandonment."

■ Certainly, in the view that "some appreciable interval between the alleged abandonment and the act from which escape is sought" must be shown, the instruction given was most favorable to the accused, and in our opinion fully protected all his legal rights.

In these circumstances, we have no alternative but to affirm the judgment of conviction unless it appears from an inspection of the record that in some material respect appellant was not accorded a fair and impartial trial.

■ He was represented in the District Court and in this court by industrious counsel, and the sole ground for reversal argued in the brief is that in giving the jury Instruction 2–A the court erred. That instruction told the jury that in order to find the defendant guilty of murder in the

---

[1] D.C.Code 1940, Title 22, Sec. 2401.

first degree they must find beyond a reasonable doubt that at the time of the killing he was actually perpetrating or attempting to perpetrate a robbery; that if they failed to find that the killing occurred during the perpetration or attempted perpetration of a robbery, it would, if with malice aforethought, be one of second degree murder, or that if the killing occurred as the result of the involuntary firing of the gun by the defendant or as the result of his negligent and careless use of the gun, it would be manslaughter. Counsel argue that under the indictment the jury could only convict of first degree murder or acquit, that the instruction as to second degree murder and manslaughter was confusing, and that it opened up a matter not properly for the jury's consideration. It is enough to say as to this that the particular instruction was requested by counsel for appellant and, if it is subject to criticism, which we are far from saying it is not,[2] it was wholly favorable to the defendant, and he cannot complain. Brashear v. Commonwealth, 275 Ky. 356, 121 S.W.2d 718.

On the argument in this court, counsel called attention to what was said by us in the recently decided case of Wood and Wolf v. United States, 75 U.S. App.D. C. 274, 128 F.2d 265, 267, where we held it error to admit in evidence on the trial a "plea of guilty" taken by the committing magistrate at the preliminary hearing and when the accused was not represented by counsel. It is urged that the same thing occurred here. But in this case the plea entered by the commissioner was "not guilty", which of itself distinguishes the cases. It is true that witnesses who were present at the hearing before the United States Commissioner the day following the taking of appellant's written confession were allowed to testify that when the charge of murder in the first degree was read to appellant and he was asked to plead, he answered that he was guilty of robbing and shooting, but that it was not premeditated or that he had not committed premeditated murder. So far as we can determine, the statement, as it was made, was wholly voluntary and is different from the statement in the Wood case, which was, guilty as charged. Here appellant answered the commissioner's question as he had previously answered the same question in his confession to the police, except perhaps less fully than in the latter. In both instances his answer was an explanation which he hoped would free him of the accusation of murder, and it is difficult to see why if the one was admissible—and no objection was made to the admission of either—a different rule should apply to the other. But in the view we take we need not decide this question, since it is clearly obvious that the effect of this answer was purely cumulative. Its recital in evidence added nothing prejudicially either to the confession or indeed to the evidence given by the accused at the trial. While it is true we have said many times that we reserve the right in cases of this grave character, in the interest of justice, to examine the record without regard to objections or exceptions, we are under no obligation to do so in a case in which guilt beyond a reasonable doubt is shown by all the evidence, including that of the defendant, and where a new trial could properly result only in a new conviction. See Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L. Ed. 1090.

Affirmed.

---

[2] See Sparf and Hansen v. United States, 156 U.S. 51, 60–63, 15 S.Ct. 273, 39 L.Ed. 343; People v. Schleiman, 197 N.Y. 383, 90 N.E. 950, 27 L.R.A.,N.S., 1075, 18 Ann.Cas. 588; People v. Sanchez, 24 Cal. 17; People v. Smith, supra.