**WHITE v. UNITED STATES.**

No. 13712.

United States Court of Appeals, Fifth Circuit.

Dec. 8, 1952.

Rehearing Denied Feb. 9, 1953.

510

Norman E. Moon, Birmingham, Ala., for appellant.

John D. Hill, U. S. Atty., and L. Drew Redden, Asst. U. S. Atty., Birmingham, Ala., for appellee.

Before BORAH, STRUM and RIVES, Circuit Judges.

RIVES, Circuit Judge.

The appellant jointly with one Ivan Earl Mewbourn was charged by indictment with violating 18 U.S.C.A. § 2115, that is burglary of a Post Office or of a building used in whole or in part as a Post Office. The appellant was separately tried before a jury and found guilty as charged in the indictment. The first count of the indictment charged burglary of the Post Office at Mulga, Jefferson County, Alabama, on January 30, 1951. The second count charged burglary of the Post Office at Watson, Jefferson County, Alabama, on February 5, 1951. By separate indictment returned at the same time and referred to in the companion case, 200 F.2d 514, Mewbourn and the defendant were charged with burglary of the Post Office at Flat Creek, Walker County, Alabama, in a separate division of the Northern District of Alabama.

The evidence established without conflict the forcible breaking into, entry and

larceny from the Post Office at Mulga, Alabama, on January 30, 1951, and the Post Office at Watson, Alabama, on February 5, 1951. The latter Post Office is in a building used also as a filling station, and on the same occasion the filling station was burglarized and about $2.00 in small change stolen therefrom. For the purpose of showing intent and the method of operation and with a promise to connect up the relevancy of the testimony, the Government offered to show that on the same night of the Watson Post Office burglary, February 5, 1951, the Post Office at Flat Creek, Alabama, was burglarized and this testimony was admitted over the defendant's objection.

Mr. C. B. Shubert, a Post Office Inspector, testified that in investigating the burglaries he found that the defendant lived in a trailer in a section that was not thickly populated and he found some gloves and burglar tools or instruments that might have been used to effect the entry into these Post Offices concealed under some grass or weeds on a railroad right-of-way at a point about 1050 feet from the trailer where the defendant lived; that they were slightly closer to a house used as a residence than they were to this trailer. Over the defendant's objection, the Government was permitted to exhibit these gloves and tools to the jury.

Mr. Shubert testified that on the first occasion that he talked to the defendant about the three burglaries, the defendant denied any participation in them, that he later showed him a map that was drawn at the direction of the co-defendant, Mewbourn, while he was in custody at Shreveport, Louisiana. The defendant objected to any testimony about the map, but upon the Government's promise to connect up its relevancy, the court overruled such objection. Mr. Shubert testified that at the time he showed the map to the defendant, he had located a safe that was missing from the Post Office at Flat Creek, Alabama. He was asked what statement, if any, the defendant made after being shown the map. The defendant objected but the witness was allowed to answer, "The first remark that he made when I

laid this down before him and showed it to him was he asked the question 'Have you found the safe?'" Mr. Shubert told the defendant that he had found the safe and asked if he wanted to see it. The defendant replied no and "immediately got up stood up out of his chair and said 'Come on and I will go and show you all where the money order forms are.'" The defendant then led the way to a place in the country where the money order forms inside a plastic case were hidden in a stump hole covered with leaves and straw in the vicinity described by the map. They were actually pulled out of the stump hole by a Birmingham City Detective when the defendant was a few steps away. These money order forms had been printed by the Post Office Department for use at Flat Creek, Alabama. Over the defendant's objection, they were introduced in evidence. Following that occurrence Mr. Shubert testified that the defendant admitted that he participated in the burglaries but refused to sign a statement. Mr. Shubert's testimony was corroborated by that of the Birmingham City Detective, J. W. Jones.

Mr. Jones, along with another City Detective, arrested the defendant on Friday, February 16, 1951, at approximately 5:30 p. m., and testified that they placed a charge of burglary and grand larceny against him. They did, however, immediately bring the defendant to Mr. Shubert's office in the Post Office Building, after which he was lodged in the City Jail in Birmingham under the charge of burglary and grand larceny, though no warrant was issued. Mr. Shubert and the detectives talked to the defendant on Friday afternoon at Mr. Shubert's office, probably again Saturday at the City Jail, and again the following Monday at Mr. Shubert's office. There was no testimony that the defendant was coerced, abused, or threatened, and the officers testify to the contrary. It was late Monday afternoon when the defendant led the officers to the place where the money order forms were hidden and then admitted his participation in the burglaries. Mr. Jones testified that in arresting the defendant and holding

him on a charge of burglary and grand larceny, he was acting on instructions from the Detective Bureau of the City of Birmingham and under the authority vested in him by said City and that he was not an officer of the Federal Government.

Mr. Shubert, the Post Office Inspector, testified that the defendant was not in his custody until late Monday when they got back from the woods where the money order forms were located and that at that time they could not find the United States Commissioner and actually carried the defendant before the Commissioner the following morning (Tuesday morning).

The first reference to what occurred before the Commissioner came in the cross-examination of the Detective J. W. Jones by the defendant's counsel:

"Q. In your best recollection, what charge did the Commissioner tell him he was charged with?

"A. He was charged with burglary of the Post Offices.

"Q. And you recall that he pleaded not guilty to it, don't you?

"A. It is my best memory that he did plead guilty.

"Q. It is your best memory that he did plead guilty?

"A. Yes, sir.

"Q. But you don't know that he not plead not guilty (sic)?

"A. I just say to my best memory.

"Q. In your best recollection?

"A. I think to my best memory he pled guilty."

Over the defendant's objection the United States Commissioner, Mrs. Louise Charlton, was permitted to testify:

"A. The complaint was read to the Defendant and his rights in the matter outlined to him. At that time he did not have an attorney and waived an attorney and also waived hearing before me and said there was no use in having a hearing, that he was guilty. Now, those three Post Offices were mentioned in the complaint, Flat Creek and Watson and Mulga.

"Q. They were read to him?

"A. They were read together. Now, he pled guilty to the complaint as it was read. He did not differentiate between any one of the three Post Offices."

The defendant did not testify and offered no evidence in his own behalf.

■ Appellant's first and most serious contention of error is that under the McNabb Rule [Rule 5(a), of the Federal Rules of Criminal Procedure; McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829; Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100; and kindred cases] the court erred in admitting in evidence his oral admissions. Before the question is reached of whether there was unnecessary delay in taking the defendant before a United States Commissioner, it must first be determined that a federal officer, here Mr. Shubert the Post Office Inspector, had the custody and control of the defendant. The Birmingham City Detectives showed a very high degree of cooperation with and assistance to the Post. Office Inspector. Both Mr. Jones and Mr. Shubert testified orally and the inferences and conclusions to be drawn from their testimony so far as the same relate to the admissibility of this evidence were primarily for the District Judge. He had the advantage of seeing and hearing the witnesses. If he believed their testimony to the effect that the defendant was being held under a state charge of burglary and grand larceny on instructions from the Detective Bureau of the City of Birmingham, and that his custody was not turned over to the federal officer until shortly prior to the time that he was carried before the United States Commissioner, then the evidence would not be inadmissible under the McNabb Rule. It has been held that "unlike the showing of non-coercion as to a confession, the burden of showing unreasonableness of delay in arraignment rests upon the defendant", United States v. Leviton, 2 Cir., 193 F.2d 848, 854. In United States v. Carignan,

342 U.S. 36, 45, 72 S.Ct. 97, the Supreme Court declined to extend the McNabb Rule of exclusion to statements concerning other crimes while prisoners are legally in detention on criminal charges. Under what the District Judge had a right to conclude the true facts to be, we think that this case falls outside the reason for the Mc-Nabb Rule which, as we understand, is to abolish unlawful detention by or at the instance of federal officers and to require observance of Rule 5(a) Federal Rules of Criminal Procedure, 18 U.S.C.A.

■ The District Court did not err in admitting testimony relating to the burglary of the Flat Creek Post Office. That burglary occurred on the same night as the burglary of the Watson Post Office. The manner of entry was similar, and the money orders stolen from the safe are intimately related to the admissions of the appellant. See Foster v. United States, 5 Cir., 256 F. 207, 211; Lotto v. United States, 8 Cir., 157 F.2d 623, 627; United States v. Leviton, 2 Cir., 193 F.2d 848, 852.

■ Under the authority of Sorenson v. United States, 8 Cir., 168 F. 785, 793, 794, the appellant insists that the court was in error in permitting the tools and gloves to be exhibited before the jury. Within a few days after the commission of the last burglary, the tools and gloves were found hidden under grass and weeds about 1050 feet from the trailer occupied by the defendant as a residence. The jury had a right to infer that the tools were such as could have been used to effect the entry into the buildings. We do not think that the court erred in permitting them to be exhibited to the jury.

■ The court properly admitted testimony concerning the map drawn by Mewbourn and properly allowed the map itself to be introduced as evidence. The Post Office Inspector identified the map as the one he had presented to the appellant during his interrogation and testified that the appellant upon being shown the map made several statements relative to its significance and to the location of the money orders hidden near the spot indicated on the map. The map is tied in with the defendant's confession as were the money order forms. See Dean v. United States, 5 Cir., 246 F. 568, 577.

■ The appellant strongly urges that the testimony of the United States Commissioner to the effect that on his preliminary examination the appellant said that he was guilty and pleaded guilty to the complaint as it was read was erroneously admitted. Rule 5(c) provides that "The defendant shall not be called upon to plead" on his preliminary examination. In Wood v. United States, 75 U.S.App.D.C. 274, 128 F.2d 265, 267, 141 A.L.R. 1318, it was held error to admit in evidence on the trial a plea of guilty taken by the committing magistrate at the preliminary hearing when the accused was not represented by counsel. In that case there was testimony that the charge was read aloud to the defendants and that they pleaded guilty after being asked "How do you plead, guilty or not guilty?" The same court distinguished that case from a wholly voluntary statement made by an accused upon preliminary hearing. Mumforde v. United States, 76 U.S.App.D.C. 107, 130 F.2d 411, 414. In the case at bar the Commissioner testified that the defendant's rights were outlined to him and that the defendant said there was no use in having a hearing, that he was guilty. We do not think this testimony was inadmissible under the ruling in Wood v. United States, supra. Further, the appellant's counsel had theretofore sought to draw from the witness, J. W. Jones, testimony to the effect that the appellant pleaded not guilty before the Commissioner and, we think that effort opened the door for the Government to refute that contention.

■ The appellant makes several contentions of error as to the court's oral charge. We think the charge was eminently fair and consistent with the testimony in this case. We forego detailed discussion of the appellant's contentions because no objection was made to the oral charge before the jury retired and no written requested charges were submitted.

514

Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides in part that "no party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." We find no error in the record and the judgment is affirmed.

Affirmed.